**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT of CALIFORNIA**
**WESTERN DIVISION (LOS ANGELES)**

CIVIL ACTION NO:  **2:24-cv-01631-MWF-PVC**

| | |
|---|---|
| BRANDON JOE WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN EXPRESS COMPANY; AMERICAN EXPRESS KABBAGE INC. <br> Defendants. | **Honorable Judge Michael W. Fitzgerald** <br><br> **Magistrate Judge Pedro V. Castillo** <br><br><br> HEARING DATE:  May 6, 2024 <br> TIME:  10:00 AM <br> ROOM:  5A |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS

COMES NOW, BRANDON JOE WILLIAMS, plaintiff, by and through, Brandon Joe Williams, Agent, Pro Se, and hereby files this *Response in Opposition of Defendants Motion to Dismiss,* pursuant to F.R.Civ.P. 7 and Local Rule 7-9, in the Cause captioned above, in support thereof, would show this honorable court the following:

### I. Procedural Discrepancies

The Plaintiff contends that the *Motion to Dismiss* filed by the defendants fails to comply with several critical procedural requirements as outlined in the Local Rules, particularly Local Rules 7-3, 7-5, and 7-6. The following sections detail these violations and argue for the necessity of the court's thorough review and consideration.

### II. Substantive Arguments Against Dismissal

In addition to procedural concerns, this response will address the substantive aspects of the claims made by the Plaintiff, demonstrating their legal validity and the factual disputes that preclude a dismissal at this procedural stage.

### III. Point-by-Point Rebuttal to Defendants' Motion to Dismiss

1) **Lack of Evidentiary Support**: Contrary to the requirements of substantiated legal claims, the defendants have failed to provide any factual evidence to counter the plaintiff's allegations. Mere general assertions without factual or legal substantiation are insufficient to meet the burden of proof required under *Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F Supp. 647.*, which mandates that motions to dismiss must be supported by evidence when factual disputes are present.

2) **Allegations of Illegitimate Forms of Payment**: The defendants claim that the plaintiff provided 'illegitimate forms of payment,' yet they have not substantiated this claim with any evidence. Under the rules of civil procedure, such an assertion must be supported by concrete evidence, not merely by the allegations in the motion.

3) **Mischaracterization of Plaintiff's Status**: The plaintiff has not claimed to be a 'lender' capable of creating cash, as inaccurately described by the defendants. Rather, the plaintiff maintains that they are the original creditor, and any representations to the contrary by the defendants are misleading and unsupported by the factual record.

### IV. Rebuttal to Plaintiff's Allegations as Characterized by Defendants

The defendants summarize the causes of action brought by the plaintiff, but they fail to accurately interpret the legal and factual bases of these claims. The following points clarify the plaintiff's position and correct misconceptions presented by the defendants:

1) **Misinterpretation of Credit and Payment**: Defendants acknowledge that "American Express then extended credit to Plaintiff, which Plaintiff believes he already paid for with the Documents." It is essential to distinguish between a bank lending money and extending credit. As established in *First Nat'l Bank of Tallapoosa v. Monroe*, a bank can lend its money, but not its credit (135 Ga 614, 69 S.E. 1123 (1911)). The plaintiff's argument is based on the premise that the transactions involved actual value, contrary to the defendants' characterization of them as mere 'documents not tied to anything of value.' This point challenges the defendants' assertion by clarifying that the nature of the transaction involved legally recognized instruments of value.

**V. Rebuttal to Defendant's Argument on Standard of Review**

The defendants reference the Standard of Review under Rule 12(b)(6) to argue that the complaint does not state a plausible claim for relief and hence should be dismissed. However, the plaintiff contends that the complaint meets the plausibility standard set forth by the Supreme Court in *Bell Atl. Corp. v. Twombly* and further clarified in *Ashcroft v. Iqbal*. The plaintiff provides more than mere "labels and conclusions," and the factual context of the claims allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

1) **Meeting the Plausibility Standard**: The Complaint articulates grounds that suggest more than a sheer possibility that a defendant has acted unlawfully. As such, the factual allegations raised are sufficient to raise a right to relief above the speculative level, thus satisfying the requirement for a claim to be plausible on its face.

2) **Defendants' Lack of Proof**: At this stage of the proceedings, it is crucial to note that the defendants have not provided concrete proof that refutes the plaintiff's assertions that the documents and parcels sent were not legal tender. The mere denial of the nature of these documents without substantial evidence or detailed examination goes against the principle that at

the motion to dismiss stage, the truth of the plaintiff's allegations is assumed. This presumption necessitates a more thorough examination than what is provided by a mere dismissal based on defendants' assertions.

3) **Premature Dismissal is Nonsensical**: Dismissing the complaint at this juncture without allowing for a factual determination of the nature of the documents and parcels described is premature and nonsensical. It deprives the plaintiff of the opportunity to prove his claims, which may indeed be grounded in factual legalities not yet fully explored or understood at this dismissal stage.

**VI. Rebuttal to Defendant's Argument on Breach of Contract**

The defendants argue that the plaintiff has failed to state a claim for breach of contract by not specifically alleging how American Express breached the terms of the contract. However, this assertion fails to consider the plausibility standard that merely requires the complaint to outline enough factual matter, taken as true, to suggest that the claim is plausible.

1) **Existence and Details of Contractual Obligations**: The existence of a contract is evidenced by the credit card accounts and loan agreements extended to the plaintiff by American Express. At this stage, detailed contract terms are not required to be pleaded verbatim but must simply indicate the existence and breach of such contracts.

2) **Plaintiff's Performance and Defendant's Breach**: The plaintiff alleges performing contractual obligations by submitting documents intended as payment, which were rejected by American Express. This rejection is asserted as a breach of the contract's implied terms of reasonable handling of payment forms.

3) **Damages Resulting from Breach**: The plaintiff claims to have incurred damages as a result of the breach, which satisfies the requirement to claim that a breach has caused harm. This includes financial liabilities and potential harm from the breach of accepting agreed forms of payment.

The legal standards for assessing a breach of contract under Rule 12(b)(6) are grounded in the requirement that a complaint must articulate a plausible claim for relief. As established by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the complaint must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action. It requires sufficient factual matter, accepted as true, to make a claim plausible on its face. This standard ensures that the plaintiff's allegations of breach are grounded in factual assertions sufficient to raise a right to relief above the speculative level.

Given these points, the plaintiff respectfully requests that the court deny the motion to dismiss the breach of contract claim, as the allegations in the complaint sufficiently articulate a plausible claim that should be explored in discovery rather than dismissed at this preliminary stage.

## VII. Rebuttal to Defendant's Argument on Breach of Fiduciary Duty

The defendants assert that no fiduciary relationship exists between the plaintiff and American Express, citing the general rule that financial institutions do not owe a fiduciary duty in typical lender-borrower relationships. However, this overlooks the specific allegations and interactions that may elevate the relationship beyond mere conventional transactions.

1) **Beyond Conventional Lender-Borrower Dynamics**: The relationship between the plaintiff and American Express involved more than standard credit issuance. Allegations suggest interactions that could imply a fiduciary relationship, including advisory roles or special assurances that induced a higher level of trust and reliance from the plaintiff.

2) **Specific Allegations Overlooked**: The complaint suggests behaviors by American Express that extended beyond those of a mere lender, potentially including advisory services or special terms that characterize fiduciary relationships.

3) **Legal Standards and Precedents**: While *Nymark* provides a general precedent, it also allows for exceptions where the financial institution's role exceeds conventional activities, recognizing fiduciary duties in relationships where additional advisory or protective roles are undertaken.

4) **Request for Judicial Consideration**: Dismissing the claim at this stage is premature. The nature and extent of the relationship should be examined during discovery to determine if American Express's actions might constitute a fiduciary duty.

**Conclusion**: The plaintiff requests that the claim for breach of fiduciary duty proceed to discovery to explore the detailed nature of the interactions and determine if a fiduciary relationship was indeed established based on specific actions and commitments by American Express.

**VIII. Rebuttal to Defendant's Argument on the Federal Reserve Act**

The defendants assert that the plaintiff has not stated a valid claim under the Federal Reserve Act, particularly 12 U.S.C. § 504, arguing that there is no provision within the Act that requires financial institutions to honor the types of payments alleged by the plaintiff. This

interpretation may overlook broader implications and specific allegations relevant to the Act's enforcement provisions.

1) **Misinterpretation of the Act's Provisions**: The plaintiff alleges that American Express violated specific directives that fall under the regulatory scope of the Federal Reserve Act. While the defendant notes that Section 504 deals with penalties for violations of specified sections, the plaintiff's allegations suggest a broader interpretation where actions or omissions by American Express could be seen as contrary to the regulatory expectations set forth under the Act.

2) **Broad Application of Section 504**: Section 504 permits civil damages for violations of certain provisions, including those related to fiduciary breaches, which the plaintiff contends were part of the operational misconduct by American Express. Even if traditionally the Act does not cover every consumer-bank dispute, the specific actions of American Express are alleged to fall within behaviors potentially regulated under the Act.

3) **Need for Factual Determination**: The claim under the Federal Reserve Act should not be dismissed summarily without a factual examination of whether American Express's actions might constitute a violation of the regulatory frameworks intended to govern such financial transactions. Dismissal at this stage precludes necessary exploration of the facts which could substantiate the plaintiff's claims.

4) **Legal Precedents and Interpretations**: Legal precedents support a flexible interpretation of regulatory statutes when the alleged actions fall within a gray area of regulatory oversight. The court should consider whether American Express's refusal to act as directed by the plaintiff, assuming such directives were legally grounded, might fall under behaviors the Act intends to regulate or penalize.

**Conclusion**: The plaintiff requests that the court allow for discovery to explore the nature of the claims under the Federal Reserve Act, as a premature dismissal would prevent a thorough examination of potentially significant regulatory violations. The allegations merit a closer factual and legal analysis to determine their validity under the Act.

## IX. Rebuttal to Defendant's Argument Regarding Lack of Civil, Private Right of Action Under Federal Criminal Statutes

The defendants claim that the plaintiff's causes of action based on certain federal criminal statutes are inadmissible because these statutes do not provide for a civil, private right of action. This assertion may overlook broader legal interpretations and the potential for related civil liabilities.

1) **Misunderstanding of Statutory Interpretation**: The plaintiff's claims may leverage related civil liabilities that arise from the conduct proscribed by the criminal statutes, not solely direct statutory rights. Criminal statutes often inform standards of conduct that establish duties whose breach leads to civil liabilities under other statutes or common law principles.

2) **Alternative Legal Theories for Civil Liability**: The complaint may invoke other statutes or legal principles that provide a basis for civil liability based on conduct also proscribed as criminal. Civil claims like fraud or breach of fiduciary duty often parallel criminal prohibitions but are grounded in separate legal bases for recovery.

3) **Judicial Precedents Supporting Civil Claims Derived from Criminal Prohibitions**: Courts have recognized that while certain criminal statutes do not provide a direct private right of action, they create legal duties or standards of conduct that can give rise to civil liability under state law or under implied causes of action.

4) **Request for Judicial Consideration of Implied Rights or Related Statutes**: The plaintiff requests that the court consider the alleged violations of criminal statutes by American Express to substantively inform related civil claims, supporting a broader interpretation of law to provide remedies for wrongful acts that result in personal harm or damages.

**Conclusion**: The court is encouraged to examine the broader legal context and the relationship between the criminal prohibitions and potential civil liabilities that may arise from the same conduct, rather than dismissing the claims prematurely based on the absence of an explicit civil, private right of action.

## X. Rebuttal to Defendant's Argument Regarding Lack of a Civil, Private Right of Action Under 18 U.S.C. § 1956

The defendants assert that the plaintiff cannot bring a claim under 18 U.S.C. § 1956, as it does not provide for a private right of action for alleged violations of its money laundering provisions. While federal courts have generally not recognized a private right of action directly under Section 1956, the plaintiff's claims may invoke broader legal principles and related statutes that address the underlying conduct attributed to American Express.

1) **Understanding of 18 U.S.C. § 1956 and Related Legal Frameworks**: Although Section 1956 does not explicitly provide a private right of action, the behaviors it proscribes (money laundering) may constitute part of a broader pattern of conduct that infringes on other statutory or common law rights. Claims might be pursued under statutes that address similar misconduct but do provide for civil remedies, or under state laws that penalize equivalent behavior.

2) **Indirect Civil Implications of Criminal Statutes**: Legal precedent acknowledges that while specific criminal statutes may not grant a direct civil remedy, the conduct they proscribe can still

form the basis of civil claims under associated legal doctrines, such as fraud, deceit, or breach of fiduciary duties.

3) **Judicial Interpretations and Expansions**: Courts have, in some instances, recognized implied causes of action when the conduct significantly violates public policy or statutory purposes broadly protected under other laws, as discussed in cases like Cort v. Ash.

4) **Request for Consideration of Ancillary Claims**: The plaintiff requests that the court consider the full context and implications of American Express's alleged actions under a comprehensive legal analysis, including examining related civil claims that may be supported by the facts underpinning the alleged money laundering activities.

**Conclusion**: Dismissing the claim on the grounds of no direct private right of action under Section 1956 is too narrow an interpretation and disregards potential applicability of other legal principles that could redress the alleged misconduct. The court is urged to allow the exploration of all related claims during the discovery process to fully address any wrongful conduct that overlaps with behaviors typically associated with money laundering.

## XI. Rebuttal to Defendant's Argument on Lack of a Civil, Private Right of Action Under 18 U.S.C. § 2314

The defendants assert that the plaintiff's cause of action under 18 U.S.C. § 2314 is untenable because the statute does not provide for a civil, private right of action and because the plaintiff's claims regarding 'collateral securities' do not involve stolen goods, wares, merchandise, securities, or monies in the traditional sense. While Section 2314 is primarily criminal, the conduct alleged may still give rise to civil claims under different legal theories.

1) **Clarification of Allegations**: The plaintiff alleges conduct by American Express that may implicate broader issues of misrepresentation, misappropriation, or fraud, which resonate with civil liabilities under other legal frameworks such as state fraud statutes or common law torts, independent of the criminal statute's direct application.

2) **Analogous Civil Claims**: Behaviors criminalized under Section 2314 can form the basis for civil claims under theories of conversion, unjust enrichment, or fraud, relying on established principles of civil law rather than a direct private right of action under the criminal statute.

3) **Judicial Interpretations and Related Statutes**: Judicial precedents recognize the possibility of civil liability arising from conduct criminalized under statutes like Section 2314, particularly when such conduct also constitutes a breach of civil duties.

4) **Request for Broader Legal Consideration**: The plaintiff requests a comprehensive examination of the alleged actions of American Express within the full scope of applicable civil laws to ensure that all potential legal remedies are considered.

**Conclusion**: Dismissal based solely on the absence of a direct private right of action under Section 2314 is overly restrictive. The court should allow exploration of all related civil claims that address the described conduct, ensuring a thorough and reflective legal inquiry.

## XII. Rebuttal to Defendant's Argument on Lack of a Civil, Private Right of Action Under 18 U.S.C. § 1348

The defendants argue that no civil, private right of action exists under 18 U.S.C. § 1348, which addresses securities fraud, and further claim that the plaintiff's accounts do not constitute securities. While Section 1348 primarily provides for criminal penalties, the substance of the plaintiff's allegations may invoke relevant legal principles supporting civil claims.

1) **Clarification and Relevance of Allegations**: The plaintiff's concerns about misrepresentation and nondisclosure in a financial context, although cited under a criminal statute, resonate with civil liabilities under other legal frameworks such as state fraud statutes or common law tort claims.

2) **Civil Implications of Criminal Provisions**: While Section 1348 does not provide a civil remedy, the behaviors it criminalizes can form the basis for civil claims under theories of fraud, deceit, or breach of contract, supported by broader principles of civil liability.

3) **Broader Interpretation of "Securities"**: The nature of the alleged 'collateral securities' and the obligations associated with them require a detailed examination to determine their classification and relevance under securities law, potentially broadening the interpretation of what constitutes securities.

4) **Judicial Interpretations and Related Legal Doctrines**: Courts have recognized that criminal statutes can inform civil liabilities, particularly when the conduct impacts individual rights or involves substantial public interest. The court should consider whether the alleged misconduct, if proven, could give rise to civil liabilities under related legal doctrines.

**Conclusion**: Dismissal based solely on the absence of a direct private right of action under Section 1348 is overly restrictive and fails to capture the essence of the alleged misconduct. The court is urged to allow exploration of all related civil claims that address the described conduct, ensuring a thorough and holistic legal inquiry.

## XIII. Rebuttal to Defendant's Argument on Lack of a Civil, Private Right of Action Under 18 U.S.C. § 1581

The defendants argue that the plaintiff's claim under 18 U.S.C. § 1581, which addresses peonage, is untenable because the statute does not provide for a private civil remedy and because the plaintiff has not sufficiently alleged conditions constitutive of peonage. While it is correct that direct civil claims under Section 1581 are unsupported, the plaintiff's allegations invite a broader legal review.

1) **Broader Legal Implications of the Alleged Conduct**: Although Section 1581 does not provide a civil remedy, the plaintiff's allegations of conditions resembling peonage could implicate other legal provisions, such as those under the Thirteenth Amendment or related civil rights statutes that prohibit involuntary servitude and provide for civil damages.

2) **Civil Rights Statutes and Analogous Claims**: Various civil rights laws, such as those articulated in 42 U.S.C. § 1981 and other statutes, might provide a basis for civil claims where actions effectively reduce a person's status to one akin to a peon or indentured servant, even if not labeled explicitly as peonage.

3) **Judicial Interpretations Supporting Broader Applications**: Courts have recognized the need to interpret criminal statutes as informing civil claims when the actions in question have significant civil rights implications, offering a legal framework for civil recourse in cases involving economic coercion or control.

4) **Illustrative Case Law**: In *United States v. Kozminski*, 487 U.S. 931 (1988), the Supreme Court discussed conditions under which coercion could rise to the level of involuntary servitude prohibited by the Thirteenth Amendment, potentially offering a legal framework for civil recourse in extreme cases.

**Conclusion**: The plaintiff requests that the court consider all related legal avenues for redress, including potential civil claims under civil rights statutes that address the core issues described under Section 1581. Dismissal should not be summary but should allow for a detailed examination of the factual context and applicable legal standards.

## XIV. Rebuttal to Defendant's Argument on Lack of a Civil, Private Right of Action Under 18 U.S.C. § 1583

The defendants contend that the plaintiff's claim under 18 U.S.C. § 1583, which deals with enticement into slavery, is baseless both legally and factually. They argue there is no civil, private right of action and the factual circumstances described do not constitute slavery or involuntary servitude. While direct civil claims under Section 1583 are not supported, the broader allegations may implicate related legal doctrines that deserve judicial consideration.

1) **Expanding the Context of Allegations**: While the plaintiff's use of terms like 'slavery' and 'enticement' under Section 1583 might initially seem incongruous, these terms, within the context of the plaintiff's allegations, may metaphorically express coercive or exploitative financial practices. The court should consider the substance of the allegations—that the plaintiff felt compelled under undue pressure or deceptive practices, which, while not literal slavery, could invoke protections under consumer protection laws or other civil statutes addressing coercive financial practices.

2) **Related Civil Claims and Statutes**: The allegations might resonate under broader civil rights or consumer protection frameworks that address coercive or deceptive financial practices. For instance, laws that govern unfair business practices or deceptive debt collection might offer a more suitable avenue for these claims, even though Section 1583 itself does not.

3) **Judicial Interpretations and Analogous Legal Principles**: Courts have occasionally recognized civil implications for criminal statutes when the behaviors significantly affect personal freedoms or involve substantial coercion, particularly in consumer finance. For example, the Fair Debt Collection Practices Act and similar state laws sometimes interpret coercive debt collection practices as actionable under civil law.

4) **Legal Precedents**: While specific precedents directly applying Section 1583 to civil claims may not exist, legal principles from related areas may provide support. For instance, cases under anti-coercion or anti-deception statutes might offer insights into how courts handle claims of undue pressure or exploitation, even when not explicitly framed as 'slavery.'

**Conclusion**: The plaintiff requests that the court not dismiss the claim summarily based solely on the narrow interpretation of Section 1583 but consider the broader legal context and implications of the alleged conduct. An exploration of all related legal avenues during discovery is essential to determine the full scope of any potentially wrongful conduct and appropriate remedies.

## XV. Rebuttal to Defendant's Argument on Lack of a Civil, Private Right of Action Under 18 U.S.C. § 1584

The defendants argue that the plaintiff's claim under 18 U.S.C. § 1584, addressing involuntary servitude, lacks basis because the statute does not provide a civil, private right of action, and the plaintiff's factual allegations do not meet the legal definition of involuntary servitude. Although direct civil claims under Section 1584 are not supported, it is crucial to consider the broader implications of the alleged conduct.

1) **Broader Implications of Alleged Conduct**: The plaintiff's use of the term 'involuntary servitude' may be seen as an expression of being subjected to undue pressure or coercive financial practices. While not involuntary servitude in the traditional sense, these practices could potentially be actionable under consumer protection laws or other statutes addressing economic coercion or exploitation.

2) **Potential Civil Law Avenues**: Although Section 1584 is a criminal statute without a civil counterpart, the conduct it criminalizes might support civil claims under theories of undue influence, economic duress, or unfair business practices under state laws. Such statutes often provide remedies for coercive behaviors that, while not amounting to criminal involuntary servitude, are nonetheless harmful and restrict personal freedom.

3) **Legal Analogies and Precedents**: Legal doctrines such as economic duress or constructive fraud may provide a framework for civil action where one party has been coerced into a transaction to their detriment under unfair terms. Courts have recognized that severe economic pressure can constitute a form of compulsion comparable to more direct forms of coercion.

4) **Judicial Interpretations**: The courts have occasionally expanded the interpretation of what constitutes coercive practices beyond the strict confines of criminal statutes. In scenarios where economic or other non-physical pressures effectively reduce an individual's autonomy, such interpretations could provide a basis for civil litigation.

**Conclusion**: The plaintiff urges the court to consider not only the literal terms of 18 U.S.C. § 1584 but also the broader legal context in which American Express's actions are alleged to have occurred. Dismissal of the claim solely based on the lack of a direct civil action under the statute overlooks potential civil liabilities that could address the conduct described. An in-depth

examination of these claims during discovery is warranted to fully understand and adjudicate the matter.

### XVI. Rebuttal to Defendant's Argument on Lack of a Claim Under 18 U.S.C. § 1589

The defendants argue that the plaintiff failed to state a claim under 18 U.S.C. § 1589 by asserting that American Express did not engage in activities that forced the plaintiff into labor or coerced services as defined under the statute. This assertion may narrowly interpret the plaintiff's claims and overlook broader legal interpretations that might support an action under this or analogous statutes.

1) **Clarification of Allegations**: The plaintiff alleges that actions taken by American Express coerced him into providing payments under conditions that he equates to forced labor or services. While not traditional labor, the plaintiff's use of 'forced to provide...Federal Reserve Notes' metaphorically suggests an undue and coercive pressure that could be construed within broader interpretations of what constitutes 'service' or 'labor' under extreme conditions of financial duress.

2) **Broader Interpretations of Coercion and Force**: Federal courts have interpreted Section 1589 broadly, recognizing various forms of coercion beyond physical threats, including economic coercion and the imposition of severe financial consequences as potential triggers for forced labor claims. The plaintiff's allegations might not directly align with traditional examples of labor but could conceptually fit within these broader interpretations if the coercion was significant enough to effectively reduce his autonomy or force actions against his will under severe penalty.

3) **Potential for Economic Duress and Coercive Control**: While traditionally applied to physical or overt threats of harm, economic duress and coercive financial practices can also constitute a form of 'harm' under expanded interpretations of statutes like Section 1589. If the plaintiff was coerced into providing payment to avoid disastrous financial consequences orchestrated by the defendant, this might rise to the level of coercion contemplated by the statute.

4) **Legal Precedents and Analogous Cases**: Courts have recognized unconventional applications of labor trafficking laws in cases where individuals were coerced into unwanted actions through non-physical means. For instance, expanding on *United States v. Sheikh*, if the plaintiff can demonstrate that American Express's actions created a belief that non-compliance would result in severe detriment, there might be grounds to consider this within the ambit of Section 1589.

**Conclusion**: The plaintiff requests the court to consider the full context and implications of American Express's actions and not dismiss the claim summarily based on a narrow interpretation of Section 1589. An exploration of all related facts during discovery is essential to fully understand the nature of the coercion alleged and to determine whether it could be actionable under this or related statutes.

## XVII. Rebuttal to Defendant's Argument on Lack of a Claim Under 18 U.S.C. § 1593A

The defendants argue that the plaintiff's claim under 18 U.S.C. § 1593A is without merit, contending that American Express did not financially benefit from the plaintiff's documents or parcels because they are not tied to anything of value. They also claim that there has been no conduct by American Express related to peonage, slavery, or trafficking. This narrow interpretation dismisses the potential broader implications of the plaintiff's allegations.

1) **Clarification of Financial Benefit**: The plaintiff's allegations that American Express benefitted financially from retaining the documents and parcels, despite their disputed value, should be considered within the broader context of how companies can benefit from practices that may not involve traditional forms of financial transactions. The benefit could be construed as retaining a financial advantage over the plaintiff through practices that could be deemed coercive or exploitative, fitting broader definitions under Section 1593A.

2) **Reframing the Allegations**: While the plaintiff's use of terms like peonage and slavery may be metaphorical, they serve to underscore the perceived severity of American Express's actions under the guise of standard financial operations. These terms, in the legal claim, might point to systemic practices that indirectly create or maintain conditions that the plaintiff equates to severe economic coercion or constraint.

3) **Broader Legal Interpretations**: Courts have recognized that the financial benefit from activities related to involuntary servitude doesn't need to stem directly from the labor or coercion itself but may also arise from ancillary practices that perpetuate dependency or compliance. This broader interpretation can encompass a range of exploitative practices that might not neatly fit traditional understandings of trafficking but still fall under the statute's intent to prevent economic exploitation.

4) **Judicial Precedents and Analogous Cases**: Legal precedents involving economic exploitation and coercion could provide a foundation for interpreting the plaintiff's claims within the context of Section 1593A. Cases interpreting financial benefits as encompassing indirect advantages from coercive practices could support a broader understanding of what constitutes "benefitting financially" under this statute.

**Conclusion**: The plaintiff urges the court to adopt a broader interpretation of the alleged conduct and the potential financial benefits derived therefrom under Section 1593A. Rather than dismissing the claim based on a narrow interpretation of value and direct financial transactions, the court should consider the full scope of American Express's actions and their potential implications under the law. This approach will ensure a comprehensive examination of all related facts and legal arguments.

**PRAYER FOR RELIEF**

    **WHEREFORE**, the plaintiff, Brandon Joe Williams, respectfully requests that this Court:

1. Deny American Express's Motion to Dismiss in its entirety based on the grounds that the claims presented do raise significant issues of law and fact that merit a thorough judicial examination, and that dismissing the claims at this stage would prevent a full and fair resolution of these matters.

2. Allow the Case to Proceed to Discovery, where all facts pertinent to the claims can be fully explored and developed, and where evidence can be gathered to substantiate the allegations made in the complaint, particularly those involving complex interpretations of law and potentially coercive practices.

3. Award Costs and Fees to Plaintiff, should it become evident through the course of proceedings that the actions of American Express were in violation of statutory or common law as alleged, and that the plaintiff incurred significant expenses in bringing these matters to light and seeking justice.

4. Grant Such Other Relief as the Court Deems Just and Proper to fully address any and all legal and equitable issues presented by this case and to provide complete redress to the plaintiff for any wrongs found to have been committed.

Plaintiff asserts that the issues at stake are of significant legal and moral importance, involving not just the interpretation of contractual and statutory obligations but also fundamental questions about fairness and justice in financial dealings. The relief sought is thus framed to ensure that the case is considered on its full merits, that justice is served, and that similar misconduct may be deterred in the future.

April 21, 2024                                        RESPECTFULLY SUBMITTED,

                                                     BRANDON JOE WILLIAMS

                                                     BY: _/s/ Brandon Joe Williams_
                                                     Brandon Joe Williams, Agent, Pro Se
                                                     P.O. Box 1962
                                                     Glendale, California 91209
                                                     brandon@williamsandwilliamslawfirm.com

                                                     (213) 309-7138

## Certificate of Service

Plaintiff certifies that on April 21st, 2024, the foregoing *Response in Opposition to Defendants Motion to Dismiss* was filed with the Clerk of this Court via ECF.  I further certify that, as of the same date, all counsel of record below were served with a copy via email and ECF.

*Distribution:*

Brianna M. Bauer
Steptoe and Johnson LLP
2029 Century Park East, 18th Floor
Los Angeles, CA 90067-3086

213-439-9400
bbauer@steptoe.com