UNITED STATES DISTRICT COURT
CENTRAL DISTRICT of CALIFORNIA
WESTERN DIVISION (LOS ANGELES)

CIVIL ACTION NO: **2:24-cv-01631-MWF-PVC**

| | |
|---|---|
| BRANDON JOE WILLIAMS®,<br><br>  Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY; AMERICAN EXPRESS KABBAGE INC.<br><br>  Defendants. | **Honorable Judge Michael W. Fitzgerald**<br>**Magistrate Judge Pedro V. Castillo** |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

COMES NOW Plaintiff, BRANDON JOE WILLIAMS®, by and through Brandon Joe Williams, Agent, Pro Se, and respectfully submits this Reply to Defendant American Express's Response in Opposition to Plaintiff's Motion for Reconsideration. Plaintiff maintains that the Court's Order dated July 10, 2024, dismissing the complaint, was based on misunderstandings and misinterpretations of the facts and legal arguments presented. This reply seeks to address and clarify these points systematically, demonstrating the validity of Plaintiff's claims regarding the negotiability and indorsements of negotiable instruments under UCC Article 3, which were overlooked or misunderstood in the initial decision.

**GENERAL REBUTTALS**

1.      On page 2, Defendants state that Plaintiff "sent money to American Express in the form of the 'Documents,' which he asserts are the equivalent of cash or currency." This statement reflects a misunderstanding of the definitions involved. The definition of "money" explicitly "does not embrace notes, bonds, evidences of debt, or other personal or real estate." In contrast, the definition of "currency" does include these additional items, indicating that the defense is confused on this subject.

Cash, on the other hand, is defined as "negotiable instruments in physical form that have been indorsed payable to the bearer or with a blank indorsement." This is supported by the last sentence of UCC 3-201(c), which states: "If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."

Frankly, Plaintiff is not entirely sure if the 1099a forms qualify as unconditional promises or orders to pay in accordance with UCC 3-104. The 1099a form definitely shows debt but does not indicate that both the creditor and debtor are in agreement, similar to what is seen in a security interest that becomes a UCC1 Financing Statement. However, whether the 1099a forms are considered such or not makes absolutely no difference to these proceedings. As mentioned in my objections, these mailed-in instruments can be entirely removed from the complaint, leaving 99% of the original complaint intact.

2.      On page 2, Defendants state: "American Express then extended credit to Plaintiff, which Plaintiff believes he already paid for with the Documents." This is patently untrue. American Express offered to swap all the unconditional promises to pay on that account with Federal Reserve Notes. The definition of "banking" from the American Bankers Association is very clear that Federal Reserve services are a major part of banking: "The word 'bank' will be used to refer

to any organization engaged in the business of banking, which is authorized to access Federal Reserve provided payment services or act as a paying bank. This includes chartered financial service providers such as commercial banks, saving banks and credit unions as well as U.S. agencies or offices of foreign banks or foreign governments or central banks, and units of Federal or State Government. A bank's eligibility to be issued a routing number is determined by the criteria specified in Section II of the Policy."

One of my personal favorite definitions of "credit" comes from 18 USC 891(1): "To extend credit means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred."

American Express never extended me the ability to defer payment because each and every transaction using the "credit card" produced real, live currency called an unconditional promise to pay. Therefore, all necessary performance was done instantly, and there was never any gap between incurring a "debt" and performance on that debt. All charges produce an unconditional promise to pay, and when I "sign" (meaning INDORSE) on a computer screen, for example, at a coffee shop, I am actually INDORSING that instrument to prepare it for negotiation. This is not "deferring" any performance at all beyond maybe the few moments between when the currency is produced and when the indorsement and negotiation take place. Even then, performance is completed because the Cardmember Agreement stipulates that the promise to pay is created even if the indorsement never takes place. This may explain why everything is indorsed with a blank indorsement.

Originally, I believed that I needed to send in some sort of external payment, hence the 1099a instruments. However, I later learned that the submission of those bills was not required and all that needed to be clarified was the NEGOTIATION and the INDORSEMENTS of all the unconditional promises to pay that have been generated on the accounts (currency) since the inception of the accounts, in accordance with UCC Article 3.

3.     In the Cardmember Agreement, there is a section entitled "How to make payments" which states: "Make payments to us in U.S. dollars with: a single check drawn on a U.S. bank, or a single negotiable instrument clearable through the U.S. banking system, for example a money order, or…" This is clear evidence that negotiable instruments can be used to pay the account, as a Federal Reserve Note is a negotiable instrument.

Furthermore, there is another section in the agreement that mentions making "a payment marked with any restrictive language," which refers to a restrictive indorsement. This language further supports the use of negotiable instruments in satisfying payment obligations. I will attach this as ***Exhibit A*** and highlight the relevant sections with a red line to emphasize this point.

4.     On page 2, in subnote 1, Defendants describe the difference between persons, citing State local rules to justify their theory that a BAR attorney needs to represent another person. This is misleading as this is a Federal case, and such an argument attempts to mix jurisdictions, potentially constituting fraud upon this most honorable court.

Beyond the possibility of local rules, the production of unconditional promises to pay via American Express occurs with each credit card transaction. An entity known as an "ens legis" or

"franchise" (my name in all capital letters) is involved in the transaction. I hope to explore this further in discovery, as my current findings on this subject are extensive and fascinating.

A crucial aspect is found in UCC 9-307, entitled "LOCATION OF DEBTOR." When considering our common bearer security used as currency, called a "Federal Reserve Note" (an unconditional promise to pay), there are two parties involved: "United States" and "Federal Reserve." UCC 9-307(h) states: "The United States is located in the District of Columbia."

According to 18 USC 8, "The term 'obligation or other security of the United States' includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and canceled United States stamps."

Thus, UCC 9-307 and 18 USC 8 identify a "person" named "United States," located in the District of Columbia, as the DEBTOR. The unconditional promise to pay, indorsed by the Treasury with a blank indorsement, is the Federal Reserve Note. This is the CURRENCY (not "money") used in commercial transactions and is a bearer security.

UCC 3-102(a) clarifies: "This Article applies to negotiable instruments. It does not apply to money." None of this is discussing money.

Subnote 1 also addresses the term "natural person." This term is often misconstrued. A clear example is: "A person is such, not because he is human, but because rights and duties are

ascribed to him. The person is the legal subject or substance of which the rights and duties are attributes. An individual human being considered as having such attributes is what lawyers call a natural person." (*Pollock, First Book of Jurisprudence* 110. Gray, Nature and Sources of Law, ch. IL)

The term "individual" is similarly ambiguous. It denotes a single person as distinguished from a group or class and may include both private or natural persons and artificial persons, depending on the context.

The terms "natural person" and "individual" are vague and open to interpretation, failing to clearly distinguish between living and non-living persons. If the defense wishes to explore these terms, I am prepared to discuss them at length. However, the terms "ens legis" for a legal fiction and "man/woman" for a flesh-body provide clearer distinctions.

Thus, the defense's argument about the necessity of BAR membership is entirely false and wastes the court's time.

5.     Regarding the parcels and their contents, as mentioned on page 2 and continuing onto page 3, this is entirely irrelevant to the core of my complaint. My complaint could easily be amended to remove all references to the parcels, which would only eliminate about 1% of its content. The essence of my complaint is 99% focused on the NEGOTIATION and INDORSEMENTS of all unconditional promises to pay and unconditional orders to pay that are associated with the accounts. This has been made abundantly clear in multiple statements, using various approaches to convey the same fundamental point. Reiterating this further seems unnecessary.

6.  I find it noteworthy that the defense continues to employ the "vapor money theory" argument on page 3. This repetitive assertion is akin to addressing an infant's misunderstanding. Once again, I am not discussing "vapor," "money," or "theories." My focus is strictly on negotiable instruments, negotiation, indorsements, and UCC Article 3. I will continue to reiterate this as necessary, but if the defense persists in mischaracterizing my arguments, I will be compelled to motion the court for the defense to undergo a competency evaluation.

7.  On page 3, the defense states: "However, Plaintiff's Motion to Amend Complaint was nothing more than Plaintiff's attempt to avoid dismissal by repackaging his claims brought under federal criminal statutes as civil causes of action." This statement dismisses my efforts as a new pro se litigant. As someone new to the legal process, my amended complaint was submitted in good faith to demonstrate to this honorable court that I am willing to correct course as needed and am actively learning and adjusting to ensure my pleadings are properly heard.

Rather than viewing this as a point of attack, it should be seen as a demonstration of good faith. I could have chosen to respond with anger or belligerence, but instead, I conducted extensive research on how to amend my complaint to ensure it was taken seriously. I have never, and would never, pursue frivolous or non-viable causes of action. Each cause of action included in my amended complaint was carefully studied and determined to be appropriate for this situation. This shows my commitment to adhering to proper legal standards and ensuring my claims are valid and well-founded.

8.  At the top of page 4, the defense states: "Plaintiff believes that the Court did not consider his claims concerning the 'negotiable instruments' he purportedly sent to American Express." This is incorrect. Aside from the 1099a instruments, I never "sent" anything to American

Express. The unconditional promises to pay generated in each individual credit card transaction were NEGOTIATED. I have no issue removing the 1099a instruments from the complaint, as they constitute only 1% of the overall content. The core of my complaint, 99%, does not involve anything that I "sent" to American Express or Kabbage. Instead, it concerns the unconditional promises and orders that were generated, their NEGOTIATION, and their INDORSEMENTS.

9. On page 4, the defense states: "Plaintiff believes this 'unconditional promise to pay' becomes both a 'negotiable instrument' and 'blank indorsement' when he signs a receipt following a purchase." This is not merely what "plaintiff believes," but what is clearly stated in UCC 3-104:

"(a) Except as provided in subsections (c) and (d), 'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor."

The unconditional promise to pay is generated when the credit card transaction takes place. The NEGOTIATION of that negotiable instrument is determined by the INDORSEMENT to prepare it for TENDER back to American Express. It is then DELIVERED, meaning it is "accepted" by American Express. American Express becomes the HOLDER, and this cycle begins anew.

10. On page 4, the defense states: "Plaintiff believes this 'negotiable instrument' or 'blank indorsement' has monetary value." Speaking of "monetary value" in the context of negotiable instruments can be misleading and requires clarification for this most honorable court. UCC 3-301(b) explains this as follows: "if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken."

Thus, negotiating a note, which is then delivered (the core issue of my complaint), suspends the obligation in the same manner as if "money" were issued. To be VERY clear, this is the "monetary value" of a note or bill.

11. On page 4, the defense states: "Based on the foregoing, it is clear that Plaintiff's claims are nonsensical and without basis in law. No amount of explanation by Plaintiff can make his claims viable." This comment highlights why I have to keep repeating myself. Either the defense has a strong aversion to UCC Article 3 or is simply unaware of its principles. For the record, I find UCC Article 3 to be one of the most profound and enlightening subjects I have had the privilege to study and understand.

12. As a point of curiosity and to demonstrate my devotion to research and law, I would like to share a fascinating historical point that may interest this most honorable court. Referring to the

original unincorporated California Constitution of 1849 (before the second, incorporated version of the State was created), we find some very interesting warnings about this situation in Article IV. I obtained this information from a local law library, as I could not find a copy online:

"Sec 34: The Legislature shall have no power to pass any act granting any charter for banking purposes; but associations may be formed, under general laws, for the deposit of gold and silver, but no such association shall make, issue, or put in circulation any bill, check, ticket, certificate, promissory note, or other paper, or the paper of any bank, to circulate as money.

Sec 35: The Legislature of this State shall prohibit, by law, any person or persons, association, company, or corporation, from exercising the privileges of banking, or creating paper to circulate as money."

It was somewhat shortly after this 1849 Constitution that the secondary entity known as the "United States" was incorporated in 1871, as defined in 28 USC 3002(15)(A), which defines "United States" as "a Federal corporation." Following this, the new incorporated version of the "State of California" was issued its own Constitution in 1879. The original 1849 Constitution still survives today in 2024, within the unincorporated version of the State. Therefore, the use of Federal Reserve Notes is, technically, illegal in California as a method of currency, due to them being promissory notes.

13.     On page 5, the defense states: "In the present case, the Court correctly dismissed Plaintiff's claims against American Express because they are patently frivolous, and Plaintiff has presented no new argument as to why his claims are viable." This assertion is incorrect. The dismissal primarily referenced the 1099a instruments, which constitute only 1% of the overall

pleadings. The core of my complaint, which involves the NEGOTIATION and INDORSEMENTS of negotiable instruments, was not adequately addressed in the dismissal. Additionally, it appears that the judge either misunderstood my complaint or was confused, as my pleadings have nothing to do with "money." I filed a negotiable instruments case, NOT a "money" case.

14.     On page 5, the defense states: "Plaintiff (with or without his trademark) cannot create currency by making purchases with a credit card." This statement reflects a fundamental misunderstanding. EVERYONE, including the judges involved in this case, is "creating currency" EVERY SINGLE TIME THEY PROCESS A TRANSACTION WITH THEIR CREDIT CARD. This is not exclusive to just the plaintiff or myself as the agent. To be extensively clear on this point: **EVERY SINGLE CREDIT CARD TRANSACTION THAT OCCURS IN THIS COUNTRY PRODUCES AN UNCONDITIONAL PROMISE TO PAY. A FEDERAL RESERVE NOTE IS AN UNCONDITIONAL PROMISE TO PAY.** The definition of "currency" includes notes, bills, and evidences of debt. **EVERY SINGLE INDIVIDUAL WHO USES A CREDIT CARD BECOMES THE "HOLDER" OF THAT UNCONDITIONAL PROMISE TO PAY AND THEN "INDORSES" THAT NOTE TO PREPARE IT FOR NEGOTIATION.**

15.     On page 5, the defense states: "Plaintiff (with or without his trademark) cannot create currency by signing a receipt following a credit card purchase." This statement is fundamentally flawed. Neither myself as the agent nor the plaintiff have the option to "not create currency." Currency is **A-L-W-A-Y-S** created from a credit card transaction. Even if I took extraordinary measures to prevent currency from being created, it would have **ABSOLUTELY NO EFFECT**

**WHATSOEVER**. Currency is **A-L-W-A-Y-S** created whenever a brand-new unconditional promise or order is generated.

For instance, when the most honorable judge of this case issues an unconditional order to pay, such as in sanctions, he/she is **CREATING CURRENCY** by issuing that order. Sanctions are "delivered" (meaning "accepted"), and the person being ordered becomes the HOLDER. The HOLDER then indorses the instrument to prepare the bill of exchange for negotiation. The HOLDER then tenders it back to the court, and the court accepts that tender by having it delivered into the docket. The court then becomes the HOLDER and performs or dishonors the instrument in accordance with UCC 3-502. There is **NO OTHER WAY** to dishonor an instrument besides what is found in UCC 3-502.

This is how the real world operates, and any attempt by the defendants to divert me from the truth located in UCC Article 3 is futile. UCC Article 3 is the most empowering body of text I have ever had the pleasure to study. I am profoundly grateful for the existence of such a powerful body of law and thank this court for serving as an enforcement arm for such freeing and powerful technology.

16.     On page 5, the defense states: "Plaintiff cannot viably claim the documents he purportedly sent to American Express have monetary value, are currency, or are equivalent to 'US dollars' just because he believes them to be." The term "legal tender," which encompasses the definition of "US dollars," is defined in 31 USC 5103 as: "United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for debts."

The definition of "currency" includes notes, bills, and evidences of debt. UCC 3-104 defines a debt instrument as "an unconditional promise or order to pay." An unconditional promise to pay is called a "promissory note" or "note" for short. An "unconditional order to pay" is a "bill of exchange" or "bill" for short. A Federal Reserve Note is an unconditional promise to pay between two persons: "United States" (who is "located in the District of Columbia" according to UCC 9-307(h)) and "Federal Reserve." This concept is straightforward, so either the defense is feigning ignorance or genuinely lacks understanding, neither of which constitutes a valid defense.

17.     On page 5, the defense states: "American Express did not violate any law by not accepting his illegitimate forms of payment." This is patently false as the instruments were not properly dishonored in accordance with UCC 3-502, and UCC 3-603(b) applies: "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates."

If the defendants physically received the instruments, which they have already admitted to, then they "accepted" the instruments and would need to properly dishonor them as a payment in accordance with UCC 3-502. If they cannot dishonor the instruments in accordance with UCC 3-502, then they **M-U-S-T** be applied to the accounts.

Thus, not only did they violate the laws of UCC 3-502, they also violated UCC 3-603(b). Beyond this, it is important to note that this point pertains to only 1% of the complaint.

18.     On page 5, the defense states: "American Express also did not commit any wrong by purportedly failing to tell Plaintiff that he could create currency, which apparently now Plaintiff claims is the true subject of his Complaint." This assertion is convoluted. The creation of currency was never the primary concern; the focus was on the NEGOTIATION and INDORSEMENT of produced unconditional promises to pay. This constitutes a significant portion of the individual line items in the original complaint. If we were to review the original complaint LINE BY LINE, this misunderstanding would be clarified. However, such a detailed examination would likely need to be conducted in person.

19.     At the bottom of page 5, the defense states: "Plaintiff also failed to cite to any case law or statute that supports his frivolous legal theories." I have diligently searched for case law on the subjects of NEGOTIATION and INDORSEMENT and have found little to none. I believe this represents an entirely new avenue of legal discovery, and I am very excited about the opportunity to create case law on this subject. This would allow others to experience the same incredible freedom I have found in UCC Article 3.

Sticking to the original texts of UCC Article 3 is more pure and closer to the truth than relying on previous interpretations. Therefore, I prefer to focus on the actual texts of UCC Article 3 and the basic functionality of negotiable instruments, rather than case law, especially since the operation of negotiable instruments is very uniform at the federal level.

20.     On page 5, leading into page 6, the defense states: "American Express already explained at length that Plaintiff's claims fail because he failed to allege that he sent legitimate forms of payment to American Express to pay his debt on the Accounts." This assertion is incorrect. "Legitimate forms of payment," as defined even in the attached Cardmember Agreement in ***Exhibit A***, include "negotiable instruments," which are defined in UCC 3-104 as "an

unconditional promise or order to pay." Therefore, either the defense is quite ignorant of this fact or is simply pretending to be.

21.     On page 6, the defense states: "Moreover, the Uniform Commercial Code does not support Plaintiff's claims. Plaintiff simply misconstrues UCC provisions that define negotiable instruments in connection with commercial transactions. Nowhere does the UCC support Plaintiff's contention that he (with or without his trademark) can create currency." This particular paragraph actually caused Brandon Joe Williams to laugh out loud when read, so thank you for that. This entire paragraph suggests a couple of possibilities:

1. The defense has no clue about the intricacies and glories of UCC Article 3 and is attempting to dismiss its applicability in a terribly ineffective manner. This might be due to their ego being challenged by a pro se litigant possessing substantial knowledge of a subject they are not familiar with, while they are attempting to defend a massive financial corporation. This response, in opposition to reconsideration, was made by a partner at a large law firm with extensive legal experience. The idea that a very new pro se litigant is discussing UCC Article 3 might be unsettling for Mr. Newman.
2. The defense realizes that UCC Article 3 is indeed correct and appropriate for this situation and is attempting to deflect it to mislead this honorable court, which would constitute fraud. Such behavior should be held in contempt. If the defense continues to feign ignorance on this subject, I will be compelled to file motions for contempt against the defense and lodge complaints with the BAR for attempting to perpetrate fraud upon this honorable court.

22. In conclusion, the defense is obviously either VERY ignorant or pretending to be on the subject of UCC Article 3. What the plaintiff needs is the chance to explain the situation with careful attention to UCC Article 3. Everything has been explained here as well as in previous filings, but it may require this honorable court to review the situation multiple times and in multiple ways to gain a clear understanding. I am more than willing to conduct presentations, create PowerPoints, act out scenes, or take any other necessary steps to ensure a full understanding of the operations of NEGOTIATION, INDORSEMENTS, and UCC Article 3. Thank you very much for this opportunity to be heard and to seek relief for the egregious crime of debt slavery, commonly known as "peonage."

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Joe Williams respectfully requests that this Honorable Court:

1. **Reconsider the dismissal of Plaintiff's complaint** in light of the comprehensive objections and rebuttals presented herein, which clarify the focus on the negotiation and indorsements of negotiable instruments under UCC Article 3, rather than any irrelevant theories about money.
2. **Grant a hearing** to allow Plaintiff to present a detailed explanation of the relevant provisions of UCC Article 3 and to address the significant misunderstandings surrounding the negotiation and indorsements of negotiable instruments, which are central to Plaintiff's claims.

3. **Allow Plaintiff to amend the complaint** to remove any references to the 1099a forms, thereby streamlining the complaint to focus solely on the issues of negotiation and indorsements under UCC Article 3.

4. **Recognize that Plaintiff's claims are not frivolous** and are grounded in established legal principles governing negotiable instruments, warranting full consideration and adjudication by this Court.

5. **Provide any further relief that this Court deems just and proper** to ensure that Plaintiff's claims are fully heard and fairly adjudicated, including but not limited to, compensation for any damages incurred due to the wrongful dismissal and unjust enrichment by American Express.

6. **Address the defendants' actions** which may constitute contempt or fraud upon this honorable court, and take appropriate measures to ensure that justice is served.

Plaintiff is committed to presenting this case clearly and thoroughly, using all necessary means to ensure that the operations of negotiation, indorsements, and UCC Article 3 are fully understood.

July 27, 2024                                              RESPECTFULLY SUBMITTED,

                                                           BRANDON JOE WILLIAMS®

                                                           BY: /s/ *Brandon Joe Williams*
                                                           Brandon Joe Williams, Agent, Pro Se
                                                           P.O. Box 1962
                                                           Glendale, California 91209
                                                           brandon@williamsandwilliamslawfirm.com
                                                           (213) 309-7138

## Certificate of Service

Plaintiff certifies that on July 27th, 2024, the foregoing PLAINTIFF'S *REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION* was filed with the Clerk of this Court via ECF. I further certify that, as of the same date, all counsel of record below were served with a copy via email and ECF.

*Distribution:*

Brianna M. Bauer
STEPTOE LLP
2029 Century Park East, 18th Floor
Los Angeles, CA 90067-3086
213-439-9400
bbauer@steptoe.com

Stephen J. Newman
STEPTOE LLP
2029 Century Park East, 18th Floor
Los Angeles, CA 90067-3086
213-439-9400
snewman@steptoe.com